912 P.2d 100

Frank C. McCUSKEY, an individual, and Fred Bell, an individual, Plaintiffs–Appellants,

v.

CANYON COUNTY COMMISSIONERS and Canyon County, Defendants–Respondents.

No. 21602.

Supreme Court of Idaho, Boise, December 1995 Term.

Feb. 20, 1996.

Kenneth F. White, Nampa, for appellants.

David L. Young, Canyon County Prosecuting Attorney; Charles L. Saari, Deputy Prosecuting Attorney (argued), Caldwell, for respondents.

TROUT, Justice.

This is an inverse condemnation case in which Frank McCuskey (McCuskey) and Fred Bell (Bell) claim a temporary taking by Canyon County as a result of the County's refusal, through rescission of a building permit and issuance of a stop-work order, to allow McCuskey and Bell to construct a convenience store on their property. The County contends that McCuskey and Bell's action is time barred by I.C. § 5–224. We agree and affirm the district court's order granting summary judgment in favor of Canyon County.

## I.

### BACKGROUND

McCuskey acquired a parcel of land located in Canyon County in 1978, and sometime thereafter requested a building permit to

construct a convenience store on the property believing the parcel to be zoned "heavy industrial." The permit was denied by the County because it contended the property was zoned "rural residential" pursuant to a 1979 Canyon County zoning ordinance. On November 5, 1986, McCuskey and Bell applied for a building permit to construct a Circle K store on the property. The permit was granted and Bell then submitted plans for the construction of a convenience store. On November 13, 1986, the Canyon County Planning and Zoning Commission issued a stop-work order on the construction, notified McCuskey of the stop-work order, and posted the property. All construction on the subject property thereupon ceased.

On December 11, 1986, McCuskey filed a petition for a declaratory judgment on the status of the building permit he had obtained and a writ of mandamus directing Canyon County to issue him a building permit to construct a convenience store. A petition for declaratory judgment on the zoning status of the subject property was filed by Canyon County on the following day. On March 29, 1993, this Court issued its opinion in *McCuskey v. Canyon County*, 123 Idaho 657, 851 P.2d 953 (1993) (*McCuskey I*) holding that the portion of the 1979 zoning ordinance which purported to downzone McCuskey's property was void. *Id.* at 663, 851 P.2d at 959. We also there denied McCuskey's request for a writ of mandamus. *Id.*

On February 16, 1994, McCuskey filed an inverse condemnation action, joined later by Bell, claiming a taking by the County between January 1, 1987, and March 29, 1993. The County filed a motion to dismiss the complaint for failure to state a claim upon which relief may be granted on the basis that McCuskey and Bell's complaint was time barred. The district court converted the County's motion to dismiss to a motion for summary judgment and granted the motion.

## II.

## STANDARD OF REVIEW

A motion for summary judgment must be granted by a district court if "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." I.R.C.P. 56(c). A review by this Court of a district court's ruling on a motion for summary judgment is the same as that required of the district court when it rules on the motion. *Curtis v. Firth*, 123 Idaho 598, 610, 850 P.2d 749, 761 (1993) (citations omitted). Accordingly, this Court will liberally construe the record in a light most favorable to the nonmoving party, drawing all reasonable inferences in favor of that party. *Id.* (citing *McCoy v. Lyons*, 120 Idaho 765, 769, 820 P.2d 360, 364 (1991)). If reasonable minds might reach different conclusions after all doubts are resolved against the moving party, then the district court's order granting summary judgment must be reversed. *G & M Farms v. Funk Irrigation Co.*, 119 Idaho 514, 517, 808 P.2d 851, 854 (1991) (citing *Kline v. Clinton*, 103 Idaho 116, 645 P.2d 350 (1982); *Farmer's Ins. Co. of Idaho v. Brown*, 97 Idaho 380, 544 P.2d 1150 (1976)). If, however, the evidence reveals no genuine issue as to any material fact then all that remains is a question of law over which this Court exercises free review. *Friel v. Boise City Hous. Auth.*, 126 Idaho 484, 485, 887 P.2d 29, 30 (1994) (citing *Farm Credit Bank of Spokane v. Stevenson*, 125 Idaho 270, 272, 869 P.2d 1365, 1367 (1994)).

## III.

## STATUTE OF LIMITATIONS

The United States Constitution provides that "private property [shall not] be taken for public use, without just compensation." U.S. Const. amend. V. Constitutional jurisprudence has extended this protection for property owners and, in addition to an outright taking, governmental interference with an owner's use or enjoyment of his private property may also require compensation. *Lucas v. South Carolina Coastal Council*, 505 U.S. 1003, 1013–16, 112 S.Ct. 2886, 2892–93, 120 L.Ed.2d 798 (1992). As Justice Holmes opined, "while property may be regulated to a certain extent, if regulation goes too far it will be recognized as a tak-

ing." *Pennsylvania Coal Co. v. Mahon*, 260 U.S. 393, 415, 43 S.Ct. 158, 160, 67 L.Ed. 322 (1922). If a regulation of private property that amounts to a taking is later invalidated, this action converts the taking to a "temporary" one for which the government must pay the landowner for the value of the use of the land during that period. *First English Evangelical Lutheran Church v. Los Angeles Cty.*, 482 U.S. 304, 319, 107 S.Ct. 2378, 2388, 96 L.Ed.2d 250 (1987).

In this case, Canyon County refused to allow McCuskey and Bell to build a convenience store on McCuskey's land because it contended that the land was zoned "rural residential" pursuant to a 1979 zoning ordinance. The County did issue a building permit to McCuskey on November 5, 1986, which would allow him to construct a Circle K store on his parcel. McCuskey and Bell's attempt to build a convenience store on the property was thwarted, however, when the Canyon County Planning and Zoning Commission issued a stop-work order on November 13, 1986. The order was fully complied with and all construction on the property ceased as of the following day. This Court resolved the underlying zoning dispute in *McCuskey I* finding that the portion of the 1979 ordinance which purported to downzone McCuskey's property was void.

■ McCuskey now seeks compensation for the County's interference with his use of the property, which he contends constituted a taking, during the period following the issuance of the stop-work order by the Canyon County Planning and Zoning Commission and until the date the opinion in *McCuskey I* was filed.[1] Although a zoning ordinance that downgrades the economic value of private property does not necessarily constitute a taking by the government, especially if some residual value remains after the enactment of the ordinance, *County of Ada v. Henry*, 105 Idaho 263, 266, 668 P.2d 994, 997 (1983), the issue of whether the County's actions here can properly be construed as a taking at all was not decided by the district court. The district court did not reach the substantive issue of whether the County's actions constituted an inverse condemnation because it found that McCuskey's claim was barred by the applicable statute of limitations.[2]

■ The limitations period for inverse condemnation claims is contained in I.C. § 5–224 which is the statute of limitations for all actions not specifically provided for in another statute. *See, e.g., Intermountain West*, 111 Idaho at 880, 728 P.2d at 769. I.C. § 5–224 requires that claims within its purview "must be commenced within four (4) years after the cause of action shall have accrued." In determining when the cause of action for an inverse condemnation claim accrues we note that while a taking is typically initiated

1. The County did not present an argument that McCuskey's claim of inverse condemnation may be foreclosed by the doctrine of res judicata (claim preclusion). Although the issue of a possible taking was not raised in *McCuskey I*, it appears to be an issue which " 'might and should have been litigated in the first suit' " and should therefore be barred. *Weldon v. Bonner County Tax Coalition*, 124 Idaho 31, 35, 855 P.2d 868, 872 (1993) (quoting *Diamond v. Farmers Group*, 119 Idaho 146, 150, 804 P.2d 319, 323 (1990)). The parties in this action are identical to those in the preceding suit, a requirement of the doctrine, with the exception that a second party plaintiff has been added, Fred Bell. This difference should not restrict the doctrine in this case, however, since Mr. Bell appears to have "derive[d] his interest from one who was a party" to the former action, *i.e.* McCuskey, and is therefore in privity "with a party to that judgment." *Foster v. City of St. Anthony*, 122 Idaho 883, 888, 841 P.2d 413, 418 (1992) (quoting *Kite v. Eckley*, 48 Idaho 454, 459, 282 P. 868, 869 (1929)).

2. The question of whether a downzoning of property can be considered a taking in the first place was presented to the district court but was not the basis for the court's grant of summary judgment in favor of the County. Because we can affirm the district court's order based solely upon the action of the relevant limitations statute, we need not address this threshold issue but note, in this context, that "[a] zoning ordinance which downgrades the economic value of property does not constitute a taking of property without compensation at least where some residual value remains in the property." *Intermountain West, Inc. v. Boise City*, 111 Idaho 878, 880, 728 P.2d 767, 769 (1986) (citing *Henry*, 105 Idaho at 266, 668 P.2d at 997). It appears in this case that, under our rule, the County's downzoning of the subject property to rural residential was, in all probability, not a taking. While the County's actions may indeed have resulted in a loss in the property's value, the record does not reflect that it made McCuskey's property valueless.

when government acts to condemn property, the doctrine of inverse condemnation is predicated on the proposition that a taking may occur without such formal proceedings. *First English*, 482 U.S. at 316, 107 S.Ct. at 2386. In such an informal taking this Court has decided that damages for inverse condemnation should be assessed at the time the taking occurs. *Tibbs v. City of Sandpoint*, 100 Idaho 667, 670, 603 P.2d 1001, 1004 (1979) (citing *Lobdell v. State*, 89 Idaho 559, 407 P.2d 135 (1965)). The time of taking occurs, and hence the cause of action accrues, as of the time that the full extent of the plaintiff's loss of use and enjoyment of the property becomes apparent. *Intermountain West*, 111 Idaho at 880, 728 P.2d at 769 (citing *Tibbs*, 100 Idaho at 671, 603 P.2d at 1005). In this case, McCuskey was fully aware of the extent to which Canyon County interfered with his full use and enjoyment of the property in question on November 13, 1986, the date that McCuskey was notified, via issuance of a stop-work order, that he could not build the convenience store.

McCuskey argues that since the full extent of his damages could not have been known until this Court declared that the County's downzoning was void with respect to his property, a cause of action for the County's inverse condemnation should not have accrued until our opinion in *McCuskey I* had been issued. He likens his claim against Canyon County to that of a continuing tort in that the County's downzoning, issuance of a stop-work order and rescission of his building permit were in the nature of ongoing acts that served to continuously constrain him from using his property as he wished until the downzoning was adjudicated as void. *See Farber v. State*, 102 Idaho 398, 401, 630 P.2d 685, 688 (1981). McCuskey's attempt to analogize the accrual of his inverse condemnation cause of action to that of a continuing tort flies directly in the face, however, of our decision in *Intermountain West*.

In that case a municipality issued a stop-work order to prevent the continued construction of an apartment complex by the plaintiff in March of 1975. This stop-work order was ignored as was a second stop-work order issued in June of 1975. The municipality then filed a civil suit seeking an injunction on June 19, 1975, upon which a status quo temporary injunction was granted. *Id.* at 878, 728 P.2d at 767. An order barring further construction was issued on July 30, 1975. On September 3, 1975, the trial court issued an order lifting the injunction and enjoining the municipality from interfering with the plaintiff's right to build the complex. The court's order was appealed to this Court and affirmed in *Boise City v. Blaser*, 98 Idaho 789, 572 P.2d 892 (1977) on December 27, 1977. On December 26, 1979, the plaintiff filed a lawsuit seeking damages for cost delay, lost income, and punitive damages for the municipality's wrongful issuance of stop-work orders and for the temporary injunction. On April 28, 1982, the plaintiff filed an amended complaint adding a claim for damages based on inverse condemnation. The district court granted the municipality's motion for summary judgment. *Intermountain West*, 111 Idaho at 879, 728 P.2d at 768.

On appeal we divided our review of the plaintiff's causes of action into two discrete sections, first examining the continuing tort claims followed by an analysis of the plaintiff's inverse condemnation cause of action. The continuing tort accrued on September 3, 1975, the date the injunction was lifted. *Id.* at 879–80, 728 P.2d at 768–69. We noted that the inverse condemnation claim, however, should have accrued "*no later* than July 30, 1975, when the court issued an injunction against [the plaintiff]" and that I.C. § 5–224 would bar the plaintiff's claim. *Id.* at 880, 728 P.2d at 769 (emphasis added). In that case, the plaintiff had ignored the stop-work orders issued by the municipality and so the full extent of its loss of use and enjoyment of the property was not apparent until the district court issued an injunction on July 30 to halt construction. Importantly, we did not reference our analysis of the accrual of a continuing tort cause of action into our examination of when an inverse condemnation claim properly accrues.

In the instant action, we are similarly presented with the issuance of a stop-work order by the County which McCuskey fully complied with followed some time later by an order issued by this Court in *McCuskey I*

finding the County's downzoning of the subject property to be wrongful. Although our analysis in *Intermountain West* of when an inverse condemnation cause of action accrues is arguably dicta the reasoning we employed there, based as it was on our holding in *Tibbs,* compels us to fix the date that McCuskey's inverse condemnation claim accrued as the date that the County's action resulted in the halting of construction on the site, *i.e.* November 13, 1986, and not the date of our order in *McCuskey I.* It was on November 13 that McCuskey became aware of the full extent of the government's interference with his use and enjoyment of the property. *See Tibbs,* 100 Idaho at 671, 603 P.2d at 1005.

Contrary to McCuskey's assertion, there was nothing to prevent him from including his inverse condemnation claim with his petition for declaratory judgment and writ of mandamus. *See, e.g., M.K. Transp., Inc. v. Grover,* 101 Idaho 345, 350, 612 P.2d 1192, 1197 (1980) (modern pleading rules allow parties to seek alternative types of relief regardless of inconsistency). In addition, McCuskey's argument that his cause of action should not accrue until the full extent of his damages could be ascertained, which could not occur until the zoning ordinance had first been voided, is also unavailing. We note initially that courts in this state are constrained from engrafting a discovery procedure on I.C. § 5–224 by the maxim that, "[s]tatutes of limitation in Idaho are not tolled by judicial construction but rather by the expressed language of the statute." *Independent School Dist. of Boise City v. Callister,* 97 Idaho 59, 63, 539 P.2d 987, 991 (1975). Moreover, it is well settled that uncertainty as to the amount of damages cannot bar recovery so long as the underlying cause of action is determined. *Bartlett v. Peak,* 107 Idaho 284, 285, 688 P.2d 1189, 1190 (1984) (citations omitted). Besides, although McCuskey may not have known the full extent of his damages at the time the stop-work order was issued, he would have known with certainty what they were once a taking had been finally adjudicated.

McCuskey's claim was barred, therefore, by the operation of I.C. § 5–224 as of November 14, 1990, and the district court's grant of summary judgment in favor of Canyon County is affirmed.

## IV.

## ATTORNEY FEES

Canyon County also requests the award of attorney fees on McCuskey's appeal claiming that the time bar of I.C. § 5–224 is beyond dispute with regard to inverse condemnation actions and that this Court has made its usage in this type of case clear. I.R.C.P. 54(e)(1) circumscribes a court's ability to award attorney fees to the prevailing party in civil actions to only those cases where such fees are provided by statute or contract. The court's discretion is further limited where attorney fees are awarded under I.C. § 12–121 to only those instances where a case "was brought, pursued or defended frivolously, unreasonably or without foundation." I.R.C.P. 54(e)(1). We have often stated that such fees are awardable on appeal "if the law is well settled and appellant has made no substantial showing that the district court misapplied the law." *Johnson v. Edwards,* 113 Idaho 660, 662, 747 P.2d 69, 71 (1987) (citations omitted). This Court clearly established the time when a cause of action accrues in an inverse condemnation claim in *Tibbs.* This principle was echoed in our opinion in *Intermountain West* and McCuskey has provided no "substantial" showing that the district court misapplied the rule elucidated in these cases with his particular claim and has given us no compelling reason to deviate from the rule we have established. Further, McCuskey's invitation to this Court to incorporate our analysis in *Farber* for determining the accrual of a cause of action for a continuing tort to an inverse condemnation claim was implicitly rejected in *Intermountain West,* a case that is almost directly on point with the facts of the instant action. For these reasons, Canyon County's request for attorney fees for this appeal is granted.

## V.

## CONCLUSION

The order of the district court granting Canyon County's motion for summary judg-

ment is hereby affirmed. Because the law here is well settled and McCuskey has made no substantial showing that the district court misapplied the law, the County is also awarded its attorney fees and costs on this appeal.

McDEVITT, C.J., and JOHNSON, SILAK and SCHROEDER, JJ., concur.